CLERK US DISTRICT COURT
NORTHERN DIST. OF TX
FILED

2015 AUG 31  PM 2: 18

DEPUTY CLERK

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
### ABILENE DIVISION

| | | |
|---|---|---|
| PHILLIP L. MOLAISON, JR. | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 1:14-CV-069-BL |
| | § | |
| | § | |
| CAROLYN W. COLVIN, | § | |
| Acting Commissioner of Social Security, | § | |
| | § | |
| Defendant. | § | Referred to U.S. Magistrate Judge |

## REPORT AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE

Pursuant to 42 U.S.C. § 405(g), Plaintiff Phillip Molaison seeks judicial review of the Commissioner of Social Security's decision, which denied his applications for a period of disability and disability insurance benefits under Title II of the Social Security Act.

After considering the pleadings, the briefs, and the administrative record, the Court recommends that the Commissioner's decision be affirmed and the complaint be dismissed with prejudice.

### Background

Molaison filed an application for disability insurance benefits on November 5, 2007, and alleged he became disabled on October 5, 2007. Molaison alleges he became disabled due to degenerative lumbar disc disease, sleep apnea, nerve damage, and numbness in his lower extremities. Molaison has twelfth grade education, and was previously employed as an aircraft

armament mechanic in the United States Air Force, and as a personnel scheduler. (Tr. 106, 264, 294).

Following a hearing on October 30, 2008, an Administrative Law Judge (ALJ) determined on February 4, 2009, that Molaison was not disabled. Specifically, the ALJ found that Molaison's impairments did not meet or equal any of the impairments listed in Appendix 1 of the governing regulations, that he retained the residual functional capacity (RFC) to perform light work, with limitations, and that he could perform his past relevant work. The Appeals Council denied review on June 24, 2009. Plaintiff appealed that denial in 2009, and on March 2, 2011, this Court reversed and remanded the case for further consideration. *See Molaison v. Astrue*, No. 1:09-CV-158-C, 2011 WL 1085272 (N.D. Tex. Mar. 2, 2011). On remand, a supplemental hearing was held on June 27, 2012. (Tr. 272-301). The ALJ again denied benefits on remand, in a decision dated August 23, 2012. (Tr. 246-71). Specifically, The ALJ found that Molaison's impairments did not meet or equal any of the impairments listed in Appendix 1 of the governing regulations, that he retained the RFC to perform a limited range of sedentary work, with a sit/stand option, that he could continue performing his past relevant work, and that even if he could not perform past relevant work, there were jobs that existed in significant numbers in the national and regional economies that Molaison could perform. The Appeals Council reviewed Molaison's case and affirmed the ALJ's decision on February 28, 2014. Therefore the case is properly before this Court for review.

## Standard of Review

A person is disabled if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less

than twelve months." 42 U.S.C. §§ 1382c(a)(3)(A), 423(d)(1)(A) (2012). Additionally, a claimant is disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); *see* 20 C.F.R. §§ 404.1505, 416.911. "'Substantial gainful activity' is work activity involving significant physical or mental abilities for pay or profit." *Masterson v. Barnhart*, 309 F.3d 267, 271 n.2 (5th Cir. 2002); 20 C.F.R. § 404.1572(a)-(b) (2013).

To evaluate a disability claim, the Commissioner follows "a five-step sequential analysis to determine whether (1) the claimant is presently working; (2) the claimant has a severe impairment; (3) the impairment meets or equals an impairment listed in Appendix 1 of the Social Security Regulations; (4) the impairment prevents the claimant from doing past relevant work; and (5) the impairment prevents the claimant from doing any other substantial gainful activity." *Audler v. Astrue*, 501 F.3d 446, 447–48 (5th Cir. 2007); *see also* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). "The claimant bears the burden of showing he is disabled through the first four steps of the analysis; on the fifth, the Commissioner must show that there is other substantial work in the national economy that the claimant can perform." *Audler*, 501 F.3d at 448. Before proceeding to Steps 4 and 5, the Commissioner must assess a claimant's RFC. *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005). RFC is defined as "the most [a claimant] can still do despite [the claimant's] limitations." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).

This Court's review of the Commissioner's decision to deny disability benefits is limited to an inquiry of whether substantial evidence supports the Commissioner's findings, and whether the Commissioner applied the proper legal standards. *Waters v. Barnhart*, 276 F.3d 716, 718 (5th

Cir. 2002) (citing *Estate of Morris v. Shalala*, 207 F.3d 744, 745 (5th Cir. 2000)). Substantial evidence "is more than a mere scintilla and less than a preponderance" and includes "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Masterson*, 309 F.3d at 272; *Watson v. Barnhart*, 288 F.3d 212, 215 (5th Cir. 2002). To determine whether the Commissioner's decision is supported by substantial evidence, the Court weighs four elements of proof: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) the Claimant's subjective evidence of pain and disability; and (4) the claimant's age, education, and work history. *Martinez v. Chatter,* 64 F.3d 172, 17412 (5th Cir. 1990); *Wren v. Sullivan*, 925 F.2d 123, 126 (5th Cir. 1991). If substantial evidence supports the Commissioner's findings, then the findings are conclusive and the court must affirm the Commissioner's decision. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 390, 91 S. Ct. 1420, 1422, 28 L. Ed. 2d 842 (1971); *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000). The court may not reweigh the evidence, try the issues *de novo*, or substitute its judgment for the Commissioner's, even if the court believes that the evidence weighs against the Commissioner's decision. *Masterson*, 309 F.3d at 272. Moreover, "'[c]onflicts in the evidence are for the Commissioner and not the courts to resolve.'" *Id.* (quoting *Newton*, 209 F.3d at 452).

### Previous Order of Remand

In his first appeal, Molaison argued that the ALJ rejected the opinion of the medical expert, "who opined that the Plaintiff's impairments were equivalent in severity to section 1.04 of the listing of impairments." *Molaison v. Astrue*, No. 1:09-CV-158-C, 2011 WL 1085272 at *3 (N.D. Tex. Mar. 2, 2011). This Court reversed and remanded Molaison's first appeal for further consideration by the Social Security Administration. In so doing, the Court found that the "ALJ's stated reasons for rejecting the opinion of the [medical expert] are not supported by substantial

evidence and are based on his substitution of his own lay interpretation of the evidence of record. The ALJ also rejected the opinion of Plaintiff's treating physician regarding the limitations imposed by [his] impairments on his ability to perform work activity." *Molaison,* 2011 WL 1085272 at *6; (Tr. 328). The Court further found that the ALJ's "decision was not supported by substantial evidence, and that the legal error committed by the first ALJ was prejudicial to Molaison, and thus, remand for further proceedings was warranted." *Molaison,* 2011 WL 1085272 at *6; (Tr. 328). The Court instructed that the "ALJ should further describe the weight given to the opinions of the treating and non-examining physicians." *Molaison,* 2011 WL 1085272 at *6; (Tr. 328).

### Discussion

In this second appeal, Molaison argues that (1) the ALJ did not present proper reasons to discount the opinions of his treating physicians; and (2) the ALJ improperly evaluated his credibility. (Doc. 16).

After reviewing the record, the ALJ followed the five-step sequential evaluation process and determined Molaison was not disabled within the meaning of the Social Security Act. At Step 1, the ALJ found that Molaison did not engage in substantial gainful activity at any time relevant to the decision. (Tr. 250). At Step 2, the ALJ found that Molaison had the following severe impairments: degenerative disc disease, and post-laminectomy syndrome in the lumbar spine status post lumbar laminectomy and lumbar fusion. (Tr. 250). At Step 3, the ALJ found that Molaison did not have an impairment or combination of impairments that met or equaled the listed impairment under Appendix 1 of the applicable regulations. Before proceeding to Steps 4 and 5, the ALJ assessed Molaison's RFC, and determined that he retained the ability to perform a limited range of sedentary work, with a sit/stand option, and found that he could

[L]ift and carry ten pounds occasionally and less than ten pounds frequently. He [could] stand and walk at least two to four hours in an eight-hour workday and sit about six hours in an eight-hour workday. However, he must be allowed to periodically alternate sitting and standing at will to relieve pain or discomfort. He [could] never balance, crouch, crawl, or climb ladders, ropes, and scaffolds. He [could] occasionally kneel, stoop, and climb ramps and stairs. He [could] frequently reach, handle, finger, and feel bilaterally. He [had] no visual or communicative limitations. He must avoid working around hazardous moving machinery and unprotected heights. He must avoid excessive heat and cold, excessive vibration and excessive humidity.

(Tr. 264). At Step 4, the ALJ found that Molaison's impairments did not prevent him from performing his past relevant work as a personnel scheduler. (Tr. 264). Although the ALJ concluded that Molaison could perform his past relevant work, he went on to conduct a Step 5 analysis out of an abundance of caution. At Step 5, the ALJ found that Molaison could be employed in jobs that exist in significant numbers in the national economy. (Tr. 266).

### *Treating Physicians*

Molaison once again argues that the ALJ failed to give due consideration to the opinions of his treating physicians. (Doc. 16, p. 5). Specifically, Molaison argues that the ALJ did not provide sound basis for rejecting the opinions of his treating physicians, other than the claim that other physicians had different opinions. Molaison highlights Dr. Heath's opinion that he lacked the capacity to work eight hours per day, and that Dr. Cole stated that he was unable to work due to his medical ailments. (Doc. 16, p. 6); (Tr. 239, 607).

A treating physician is a physician who has provided the claimant with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with the claimant. 20 C.F.R. § 404.1502. Generally, a treating physician is considered to be familiar with a claimant's impairments, treatments, and responses. *Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000) (citing *Leggett v. Chater*, 67 F.3d 558, 566 (5th Cir. 1995); *Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1994). Thus, a treating physician's opinion regarding the nature and severity of a

claimant's impairments should be accorded great weight when determining disability if it is

"'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not

inconsistent with . . . other substantial evidence." *Newton*, 209 F.3d at 455 (quoting *Martinez v.*

*Chater*, 64 F.3d 172, 176 (5th Cir. 1995); *Leggett*, 67 F.3d at 566; *Greenspan*, 38 F.3d at 237;

*see* S.S.R. 96-2p, 1996 WL 374188, (Jul. 2, 1996) ("If a treating source's opinion is well-

supported and not inconsistent with the other substantial evidence in the case record, it must be

given controlling weight; i.e., it must be adopted."). Following *Newton*, however, the Court of

Appeals for the Fifth Circuit explicitly clarified that the holding in that case applied only to the

limited situation where "the ALJ rejects the sole relevant treating or examining medical opinion

before it." *Qualls v. Astrue*, 339 F. App'x 461, 467 (5th Cir. 2009). Consequently, when the

record demonstrates that there are competing opinions among examining physicians, the ALJ is

not required to analyze the criteria set forth in 20 C.F.R. § 404.1527(c)(2) before it declines to

give great weight to a treating physician. *Id.* at 467; *Nicaragua v. Colvin*, 2013 WL 4647698 at

*4 (N.D. Tex Aug. 29, 2013).

Still, the ultimate disability decision lies with the ALJ, who is "free to reject the opinion

of any physician," *Bradley v. Bowen*, 809 F.2d 1054, 1057 (5th Cir. 1987), so long as good cause

is shown. *Moore v. Sullivan*, 919 F.2d 901, 905 (5th Cir.1990); *Newton,* 209 F.3d at 455; 20

C.F.R. § 404.1527.

Foremost, any determination by the Veterans Administration or its physicians as to

Molaison's disability, (*e.g.* Tr. 141-42, 607), is not binding on the ALJ. Social Security Ruling

96-5p, 1996 WL 374183 (1996), and 20 C.F.R. § 404.1527(d) are abundantly clear in articulating

that disability determinations by other agencies and by physicians are not binding on the

Commissioner. Instead, an individual's disability, within the meaning of the Social Security Act,

is a determination that is *always* reserved for the ALJ and the Commissioner. SSR 96-5p; *See Ripley v. Chater,* 67 F.3d 552, 557 (5th Cir. 1995). No "special significance" is awarded to "the source of an opinion on issues reserved to the Commissioner." 20 C.F.R. § 404.1527(d). Thus, any contention that the ALJ *must* follow the disability determination of the Veterans Administration and its doctor, Dr. Cole, (Doc 16, p. 6), is unfounded.[1]

In rejecting the opinions of Drs. Cole, Mehta, and Heath, the ALJ made the following findings: That Drs. Mehta and Heath in particular have longstanding treating relationships with Molaison. (Tr. 263). Dr. Heath specializes in pain management. Although Dr. Cole noted neurological deficits in one examination in October 2008, the same deficits did not present in subsequent examinations, despite Molaison's subjective complaints. (Tr. 263). In May 2008, Dr. Heath approved the RFC assessment that found Molaison could perform light work, however, without documentation of deterioration between May and October 2008, Dr. Heath opined in October 2008 that Molaison could only work two hours per day. Dr. Heath's findings in October 2008 that Molaison suffered motor loss, sensory or reflex loss, and had positive straight leg raises, were not supported by any documented objective findings. Dr. Heath's findings from October 2007, indicate intact strength, intact sensation, and symmetrical reflexes. Although Dr. Heath indicated Molaison had positive straight leg raises, he failed to indicate whether it was caused by radicular pain or back pain. The ALJ also noted that Dr. Heath repeatedly stated that his treatment was making a "real difference" in Molaison's life, and that the medications and stimulator in his back were adequately alleviating Molaison's pain. Thus, Dr. Heath's statement, (Tr. 239), was not supported by his physical examinations. Dr. Mehta documented very little in

---

[1] To clarify, although Dr. Cole's opinion that Molaison is disabled is not binding on the ALJ, the ALJ still has discretion to assign weight to the opinion, as he sees fit.

terms of objective findings and appeared to base his conclusions on Molaison's subjective complaints.

The ALJ also extensively discussed the findings of the orthopedic consultative examiner, Dr. Brandecker, who examined Molaison in July 2011. (Tr. 668-77). In his physical exam, Dr. Brandecker noted no evidence of sensory loss, and that Molaison's sensations were intact along with both his lower extremities. Dr. Brandecker also found that although Molaison's lumbosacral spine was tender to palpation, he had a functional range of motion, normal muscle strength, and no evidence of abnormal movements or atrophy. After the physical examination, Dr. Brandecker opined that Molaison had "signs of symptom magnification," and demonstrated "significant pain behavior." (Tr. 256, 670). Dr. Brandecker also noted that Molaison's lumbar range of motion increased while sitting. Last, Dr. Brandecker opined that Molaison's pain complaints appear to exceed physical findings. (Tr. 670).

A review of the ALJ's opinion in conjunction with the evidence on record shows no error on part of the ALJ. In this case, there was medical evidence from several examining physicians, and the ALJ thoroughly explained his reasons for affording less weight to the physicians who had an ongoing treating relationship with Molaison. The ALJ's findings and determinations in his opinion are not inconsistent with the evidence on record. The Court finds that the ALJ presented good cause for rejecting the opinions of Drs. Mehta, Cole, and Heath, and properly applied the factors in 20 C.F.R. § 404.1527(c).

### *Credibility*

Molaison's second contention is that the ALJ failed to properly evaluate his credibility. (Doc. 16, p. 7). Molaison argues that his claims regarding pain and functional limitations are credible because of his inability to perform sedentary work in the past without special

accommodations, and the Vocational Expert's testimony that the need for frequent breaks, as described by Molaison, would preclude performance of past work or other work. (Doc. 16, p. 8).

To properly evaluate a claimant's subjective complaints and credibility, the ALJ must "consider the entire case record, including the objective medical evidence, the individual's own statements about symptoms, statements and other information provided by treating or examining physicians or psychologists and other persons about the symptoms and how they affect the individual, and any other relevant evidence in the case record." SSR 96-7p, 1996 WL 374186, at *1 (July 2, 1996); *see also* 20 C.F.R. § 404.1529(c) ("We will consider whether there are any inconsistencies in the evidence and the extent to which there are any conflicts between your statements and the rest of the evidence, including your history, the signs and laboratory findings, and statements by your treating or nontreating source or other persons about how your symptoms affect you."). The ALJ must also consider the following factors when assessing a claimant's credibility:

> (1) the individual's daily activities; (2) the location, duration, frequency, and intensity of the individual's pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; (6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and (7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

SSR 96-7p, at *3.

Finally, the ALJ must cite specific reasons for his credibility finding, supported by the case record, and must clearly indicate and give reasons for the weight given to the claimant's statements; it is not enough for the ALJ to make a single, conclusory statement that the claimant's allegations have been considered and are not credible. *Id.* at *2.

Still, while the ALJ must determine the credibility of complainants, ALJs have broad discretion when making credibility determinations because they must also weigh and resolve conflicts in the evidence. *Carrier v. Sullivan*, 944 F.2d 243, 247 (5th Cir. 1991). While the ALJ's credibility finding must be made with sufficient specificity, it need not follow formalistic rules. *See Falco v. Shalala* 27 F.3d 160, 163–64 (5th Cir. 1994). "Fifth Circuit precedent [dictates that] 'an ALJ's assessment of a claimant's credibility is accorded great deference' when supported by substantial record evidence." *Newton v. Apfel*, 209 F.3d 448, 459 (5th Cir. 2000).

A reading of the ALJ's opinion indicates that he carefully considered the factors listed above. The ALJ also considered testimony from Molaison's first and second hearings, in conjunction by the evidence in record, his work history, information and observations provided by the treating physicians and consultative examiners, testimony of the medical experts, and observations by third parties. Specifically, the ALJ noted that although Molaison is limited, "neither the objective medical evidence, the claimant's allegations, nor the other non-medical evidence establishes that the claimant is so limited as to be found disabled." (Tr. 261). The ALJ describes, in painstaking detail, the evidence in the record that supported his finding that Molaison was not fully credible. (Tr. 257-64). Although not enumerating the factors outlined above, the ALJ's analysis sufficiently evinces consideration of the factors. For example, the ALJ discussed discrepancies in evidence of Molaison's daily activities. The ALJ noted that Molaison had increased activity when visiting family in Louisiana for weeks at a time, that although Molaison alleges significant limitations in his ability to sit, he was able to make long distance travel to and from Louisiana, that he was able to work on his car, and shovel ice. (Tr. 262). The ALJ also noted that when Molaison testified at the June 2012 supplemental hearing, he had not taken his pain medications prior, and testified that his pain level was a 6 on a 10-point scale, with

10 being unbearable pain. (Tr. 262, 283). Just prior to that statement, Molaison testified that his pain level *without* medication is usually an 8. (Tr. 282).

In regards to the fourth factor, the ALJ noted that on several occasions, Molaison reported to his physicians that he was doing well with medication and treatment. (Tr. 234-35, 240, 253, 264, 440, 446, 654). Molaison also failed to report to his treating physician any drowsiness as a side effect of his medications. (Tr. 240, 263, 416, 418, 422, 426). The ALJ also noted that although Molaison reported that he was having debilitating side effects from his various medications, the record showed "essentially no evidence the claimant has reported intolerable side effects previously, or that he has requested a change in medications or dosage due to intolerable side effects." (Tr. 262-63).

It is clear and apparent that the ALJ properly evaluated Molaison's credibility. "The ALJ's findings regarding the debilitating effects of the subjective complaints are entitled to considerable judicial deference." *James v. Bowen*, 793 F.2d 702, 706 (5th Cir. 1986); *Newton*, 209 F.3d at 459 (noting that the ALJ's "'credibility is accorded great deference' when supported by substantial record evidence."). Here, the Court sees no reason to disturb the ALJ's findings. The Court further finds that the ALJ's credibility determination is supported by substantial evidence.

## Conclusion

In accordance with the foregoing, the Court **RECOMMENDS** that the Commissioner's decision be **AFFIRMED**, and the case be **DISMISSED WITH PREJUDICE.**

**IT IS ORDERED** that this case is **TRANSFERRED** back to the docket of the United States District Judge.

A copy of this Report and Recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this Report and Recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.  Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

**SO ORDERED**.

Dated this _31st_ day of August, 2015.


**E. SCOTT FROST**
**UNITED STATES MAGISTRATE JUDGE**